UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:25-cv-20117-RAR

ASHLEY OWINGS, ALEKSANDR
MITERIN, AILEMA GASCON, BARBARA
MASTEN, COURTNEY HOPPER,
ROBERT OWEN, JEANNE AUER,
JENNIFER CALDWELL-JOCK, and H.P.
through her guardian LAUREN G.
SAVENER, on behalf of themselves, and all
others similarly situated,

              Plaintiffs,

     v.

MEDUSIND, INC.,

              Defendant.

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMIMNARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] file this Unopposed Motion for Preliminary

Approval of Class Action Settlement. The Motion is supported by the Joint Declaration of Interim

Co-Lead Class Counsel ("Joint Decl."), attached as ***Exhibit B***.

**I.     INTRODUCTION**

Defendant is a medical and dental billing and software company that provides services to

health providers throughout the country. *See generally* Complaint, ECF No. 1.  Defendant's

healthcare customers entrusted Defendant with the Private Information of their patients, including

their names, mailing addresses, email addresses, telephone numbers, health insurance and billing

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of
the Settlement Agreement, attached as ***Exhibit A***.

information (insurance policy numbers or claims/benefits information), payment information debit/credit card numbers or bank account information), health information (medical history, medical record numbers, or prescription information), and government identification (Social Security numbers, taxpayer ID numbers, driver's licenses numbers, or passport numbers). *Id.*

On December 29, 2023, Defendant detected suspicious activity on its computer systems and later confirmed that cybercriminals accessed information stored on those systems. *Id.* On or about January 7, 2025, Defendant began sending notice letters to approximately 700,000 individuals advising them that their Private Information may have been impacted in the Data Incident. *Id.*

To avoid the risk and expense of litigation, the Parties agreed to a settlement to resolve Plaintiffs' claims on a classwide basis. As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a non-reversionary all cash $5,000,000.00 Settlement Fund and valuable injunctive relief.

The Court should find the Settlement is within the range of reasonableness necessary to grant Preliminary Approval under Rule 23(e) and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives; (iv) appointing Jeff Ostrow and Mariya Weekes as Class Counsel for the Settlement Class; (v) approving the form of the Notices and the Notice Program; (vi) approving the Claim Form and the Claim process; (vii) appointing Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; (viii) establishing procedures and deadlines for the Settlement Class Members to opt-out of or object to the Settlement; and (ix) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## II.      PROCEDURAL HISTORY

1.      On January 9, 2025, Plaintiff Owings filed the first-class action lawsuit for the unlawful exposure of her and all similarly situated individuals' Private Information seeking money damages and injunctive relief. Agreement ¶ 62.

2.      Thereafter, a number of similar lawsuits with similar claims and overlapping classes were filed against Defendant regarding the Data Incident. Plaintiffs' counsel in the actions conferred and decided to work cooperatively and litigate their actions in a single action. *Id.* ¶¶ 63-69.

3.      On January 15, 2025, Plaintiff Owings filed a Motion to Consolidate Actions, Appoint Interim Class Counsel, and Set Deadline for Filing of Consolidated Complaint. *Id.* ¶ 70. On January 20, 2025, the Court granted the motion to consolidate and appointed Jeff Ostrow and Mariya Weekes as Interim Co-Lead Class Counsel. *Id.*

4.      On February 18, 2025, Plaintiffs filed their consolidated class action complaint seeking a nationwide class and a California subclass of those impacted in the Data Incident alleging claims for negligence, negligence per se, breach of third-party beneficiary, breach of contract, unjust enrichment, and statutory claims for violations of California statutes. *Id.* ¶ 71

5.      On April 11, 2025, Defendant filed its motion to dismiss the Complaint; on May 15, 2025, Plaintiffs filed a response in opposition; and on June 10, 2025, and Defendant filed its reply. *Id.* ¶ 72.

6.      The Parties decided to conserve resources and explore resolution of the Action. The Parties set a mediation with former federal magistrate and experienced class action mediator, Hon. Diane Welsh (Ret.) with JAMS. *Id.* ¶ 73.

7.      In advance of mediation, Plaintiffs requested and Defendant produced informal

discovery requests related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident, the states in which they resided on the date of the Data Incident, the categories of Private Information involved, and the security enhancements taken since the Data Incident to better protect its computer systems for future data incidents. *Id.* ¶ 74. The Parties also exchanged detailed Mediation Statements outlining their positions with respect to liability, damages, and settlement. *Id.*

8.     The mediation took place in person in Philadelphia on June 10, 2025. After a full day of negotiations, the Parties agreed to the material terms of the Settlement to resolve all claims on a class wide basis. *Id*. ¶ 75.

9.     The Parties filed a Notice of Settlement on June 12, 2025. ECF No. 47.

10.     Over the next five weeks, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents. Joint Decl. ¶ 9. The Agreement was executed on July 11, 2025. *Id*. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms. *Id.*

## III.     MATERIAL TERMS OF THE SETTLEMENT

**A.     Settlement Class -** Plaintiffs seek Preliminary Approval of the following Settlement Class:

> [A]ll living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.

A subset of the Settlement Class is the California Settlement Subclass which includes "Settlement Class Members residing in California as of December 29, 2023." Excluded from the Settlement Class are (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the

Action, that Judge's immediate family, and Court staff; (4) the mediator; and (5) the Parties' counsel in the Action. Agreement ¶ 55.

**B.     Settlement Fund -** The Settlement provides for a non-reversionary $5,000,000 all cash Settlement Fund. *Id.* ¶ 58. Defendant will fully fund the Settlement Fund within 40 days of Preliminary Approval. *Id.* ¶ 76. It will be used to pay: (1) Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Settlement Administration Costs. *Id*. ¶ 77.

**C.     Settlement Class Member Benefits -** When submitting a Valid Claim, Settlement Class Members must choose either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. *Id*. ¶ 80. In addition, each California Settlement Subclass Member who submits a Valid Claim may elect to receive a separate estimated $100.00 California Statutory Award. *Id.* ¶¶ 12, 80. Settlement Class Members may also elect to receive Credit Monitoring in accordance *Id.* ¶ 80. Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the value all Valid Claims received. *Id*. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against without receiving a Cash Payment or Credit Monitoring. *Id.*

*Cash Payments -* Settlement Class Members who elect Cash Payment A may receive up to $5,000.00 for reasonable documented losses related to the Data Incident. *Id.* ¶ 81.a. Alternatively, a Settlement Class Member may elect to receive Cash Payment B, which is an alternative cash payment in the estimated amount of $100.00. *Id.* ¶ 81.b.

*Medical Monitoring -* Settlement Class Members may also elect two years of credit monitoring services, which include: (i) real time monitoring of credit files; (ii) web-based monitoring of personal identifiable information including social security numbers, banking

5

information and credit/debit information, medical ID numbers, email addresses, and phone numbers; and (iii) access to Fraud Consultation and Identity Theft Restoration services, with access to agents to help investigate and resolve instances of identity theft. *Id* ¶ 81.d. All costs associated with the provision of Credit Monitoring shall be paid exclusively out of the Settlement Fund. *Id.*

***Injunctive Relief -*** Prior to Final Approval, Defendant will provide Class Counsel with a written attestation regarding the security measures, including the costs associated therewith, it implemented following the Data Incident (or will implement) to better protect the Settlement Class' Private Information from future disclosure resulting from a subsequent data incident. *Id*. ¶ 81.e. The costs of any such security measures on the part of Defendant were paid or will be paid separately by the Defendant and will not come out of the Settlement Fund. *Id*.

**D.     Notice Program –** The Parties have agreed on a comprehensive Notice Program, which includes a Postcard Notice, Long Form Notice, Settlement Website, and Settlement telephone line for frequently asked questions. *Id.* § IX and Ex. 1-2.

No later than five days after Preliminary Approval, Defendant will provide the Settlement Administrator with the Class List containing Settlement Class Members' names and physical mailing addresses (if available). *Id.* ¶¶ 21, 86. Thereafter, within 20 days following Preliminary Approval, the Settlement Administrator shall commence the Notice Program provided herein, using the Court-approved Postcard Notice and Long Form Notice. *Id.* ¶¶ 87.

The Settlement Website will establish as a means for Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees and Costs, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. *Id.* ¶ 59. The Settlement

Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class Members who call with or otherwise communicate such inquiries. *Id.* ¶ 85.e.

The Postcard Notice will include, among other information: (a) a description of the material Settlement terms; (b) how to submit a Claim Form; (c) the Claim Form Deadline; (d) the Opt-out Deadline which is the last for Settlement Class Members to opt-out of the Settlement Class; (e) the Objection Deadline which is the last day for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; (f) the Final Approval Hearing date; and (g) the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. *Id.* ¶ 88. The Long Form Notice will also include procedures for Settlement Class Members to opt-out of the Settlement Class or to object to the Settlement and/or Application for Attorneys' Fees and Costs, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice for those instructions. *Id.* ¶¶ 90-91.

The Settlement Administrator shall perform reasonable address traces for those Postcard Notices returned as undeliverable. *Id.* ¶ 93. If better addresses are found, the Settlement Administrator will remail the Postcard Notice. *Id.* The Notice Program shall be completed no later than 45 days before the initial date set for the Final Approval Hearing. *Id.* ¶ 94.

**E.      Claim Process and Disbursement of Cash Payments -** To receive Settlement Class Member Benefits, Settlement Class Members must accurately and timely submit a Claim by the Claim Form Deadline. *Id.* § IX. The Claim Form is attached to the Agreement as Exhibit 3. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address designated on the Claim Form, who will review them to determine their validity, eligibility, and the type and amount of the Cash Payment to which

the Settlement Class Member may be entitled. *Id.* ¶¶ 96-97. Procedures are included to identify and reject duplicate and prevent fraud and abuse in the Claim Process, as well as to send a Notice of Deficiency to correct missing or inaccurate information on Claim Forms. *Id.* ¶¶ 98-102.  The Settlement Administrator will distribute the Settlement Class Member Benefits to those who submitted Valid Claims no later than 75 days after Final Approval or 30 days after the Effective Date, whichever is later. *Id*. ¶ 105. Cash Payments will be made electronically or by paper check, and an email will be sent to Settlement Class Members electing Medical Monitoring with activation instructions. *Id*. ¶ 106.

      **F.**     **Disposition of Residual Funds –** Any funds remaining in the Settlement Fund 240 days after Settlement Class Members receive an email from the Settlement Administrator to select a form of payment shall be distributed to a *cy pres* recipient approved by the Court. *Id.* ¶ 115. The Parties propose National Cybersecurity Alliance (https://www.staysafeonline.org/).

      **G.**     **Settlement Administrator –** The proposed Settlement Administrator, Epiq, is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. Joint Decl. ¶ 29. The Settlement Administrator shall fulfill the requirements of the Preliminary Approval Order and Agreement, including the Notice Program, Claim Process, Settlement Fund, and Settlement Class Member Benefits. Agreement § VIII.

      The Settlement Administrator's duties include, *inter alia*: (a) providing Class Action Fairness Act (CAFA) Notice; (b)  completing the Court-approved Notice Program; (c) establishing and maintaining the Settlement Fund and Escrow Account; (d) establishing and maintaining a post office box to receive opt-out requests, objections, and Claim Forms; (e) establishing and maintaining the Settlement Website; (f) establishing and maintaining an automated toll-free telephone line for Settlement Class Members to call; (g) responding to any mailed Settlement Class

Member inquiries; (h)  processing all opt-out requests from the Settlement Class; (i) providing weekly reports to Class Counsel and Defendants' Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information; (j) in advance of the Final Approval Hearing, preparing a declaration confirming the Notice Program was completed in accordance with the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received and the amount of Valid Claims, providing the names of each Settlement Class Member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval; (k) distributing, out of the Settlement Fund, Cash Payments electronically or by paper check, and ensuring Credit Monitoring activation codes are issued; (l) paying Court-approved attorneys' fees and costs; (m) paying Settlement Administration Costs following approval by Class Counsel; (n) paying any residual funds to the Court-approved *cy pres* recipient; and (o) any other Settlement Administration function at the instruction of Class Counsel and Defendant including, but not limited to, verifying the Settlement Fund has been properly administered and the Cash Payments have been properly distributed. *Id.* ¶ 76. Class Counsel shall oversee the Settlement Administrator. *Id.* ¶ 74.

> **H.**     **Opt-Out and Objection Procedures -** Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Settlement Class Members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the initial scheduled Final Approval Hearing. *Id.* ¶ 49. By that Opt-Out Deadline, they must mail an opt-out request to the Settlement Administrator that includes their name, address, telephone number, and email address (if any), and

a statement indicating a request to opt-out of the Settlement Class. *Id.* ¶ 90. Any Settlement Class member who does not timely request to opt-out shall be bound by the Agreement's terms even if that Settlement Class Member does not submit a Claim Form. *Id.*

The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees and Costs. *Id.* ¶ 91. Objections must be sent to the Clerk of the Court, and mailed to Class Counsel, Defendants' Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the Objection Deadline (30 days prior to the initial scheduled Final Approval Hearing), as specified in the Notice. *Id*. It must set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the

10

preceding five years; (f)  the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (g) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (h) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (i) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 92. Class Counsel and/or Defendants' Counsel may conduct limited discovery on any objector or objector's counsel. *Id.*

     **I.**     **Releases -** Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement will be bound by the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *Id.* § XIV. The Released Claims are narrowly tailored and are only claims arising out of or relating to the Data Incident. Joint Decl. ¶ 28.

     **J.**     **Attorneys' Fees and Costs -** The amount of any attorneys' fees and costs shall be determined by the Court. Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. Agreement ¶ 112. The Application for Attorneys' Fees and Costs will be filed as part of the Motion for Final Approval filed no less than 45 days before the original date set for the Final Approval Hearing. *Id.* ¶ 113. The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 114. The Notices will advise the Settlement Class of the amounts of attorneys' fees that Class Counsel intends to seek.

**V.**     **ARGUMENT**

     **A.**     **The Settlement Class Should Be Certified.**

     The Supreme Court has recognized the benefits of a proposed settlement of a class action can be realized only through settlement class certification. *See Amchem Prods. Inc. v. Windsor*,

521 U.S. 591, 620 (1997). To certify a class, the class representative must have standing to sue and the proposed class must be adequately defined and clearly ascertainable. *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Plaintiffs must satisfy all Fed. R. Civ. P. 23(a) requirements (numerosity, commonality, typicality, and adequacy), and one of the Fed. R. Civ. P. 23(b) requirements. Plaintiffs seek certification under Rule 23(b)(3), requiring common questions of law or fact to predominate over any individual issues and class treatment to be the superior method for efficiently handling the Action. These requirements are met for settlement purposes.

      1.      **Standing –** A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff must establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman*, 221 F.3d at 1279). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021).

      Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach." *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *6 (S.D. Fla. Feb. 11, 2025) (citing *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla.

Dec. 5, 2022)). In *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200-1208 (S.D. Fla. 2022), this Court extensively addressed standing in data breach class actions, and subsequently relied on that analysis when preliminarily approving a class settlement in that case. *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 n.2 (S.D. Fla. Apr. 10, 2024) (citing *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023)); *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2024 WL 4547212, at *3-7 ((S.D. Fla. Feb. 11, 2025) (denying motion to dismiss for lack of standing).

Here, all Plaintiffs have standing because, like the Plaintiffs in *Fortra*, *Mednax*, and *Desue*, their Private Information was allegedly accessed and acquired by cybercriminals. Because all Plaintiffs and Settlement Class Members had their Private Information impacted in the Data Incident, they have all suffered an injury in fact, that is fairly traceable to the Data Incident, and which could be redressed through an appropriate damages award if this case was litigated through trial. As in *Forta*, *Mednax*, and *Desue*, the pursuit of damages and injunctive relief based on actual misuse and actual access to the Settlement Class' data is a plausible injury in fact – the substantial risk of future harm from identity theft and emotional injury; the diminution in the value of their Private Information; and the loss of privacy. *Mednax*, 603 F. Supp. 3d at 1202-05; *Fortra*, 2025 WL 457896, at *7.

The causal connection between the Data Incident and the Settlement Class' injuries, or traceability to the Data Incident, exists for Article III standing. The injuries must be "fairly traceable" to Defendant's actions, but that does not mean Plaintiffs are required to show proximate cause because harm flowing indirectly from the Data Incident are sufficient for standing. *Fortra*, 2024 WL 4547212, at *6-7; *Mednax*, 603 F. Supp. 3d at 1205. Defendant's actions need not be the

very last step in causation chain. *Id.* Defendant's alleged failure to protect the Private Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiffs' documented incidents of identity theft, economic losses, lost time, and emotional distress, and they are at substantial risk of future identity theft incidents. *See Fortra*, 2025 WL 457896, at *7; *Mednax*, 603 F. Supp. 3d at 1206. What is important is not that the Data Incident provided all information necessary to inflict those harms; it is enough that the Data Incident could give identity thieves information to aid those harms. *Id.*

       **2.**       **Ascertainability -** Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "adequately defined and clearly ascertainable." *Id.* (citation omitted). Class definition and ascertainability typically involve one inquiry because, without an adequate definition for a proposed class, a district court cannot ascertain who belongs in the class. *Id.* For purposes of class certification, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. An adequately defined class thus should be defined by objective criteria with its members identifiable. *Id.* Here, the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains sufficient objective criteria to allow an individual to determine whether he or she is a Settlement Class Member—i.e., whether they were sent notification that their Private Information was potentially compromised as a result of the Data Incident. Agreement. ¶ 55.

       **3.**       **Rule 23(a) -** Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Each requirement is satisfied here.

**Numerosity (Fed. R. Civ. P. 23(a)(1))** - Class sizes exceeding 40 are typically adequate for numerosity. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Fortra*, 2025 WL 457896, at *4; *Mednax*, 2024 WL 1554329, at *4. Here, the joinder of approximately 715,000 Settlement Class members would certainly be impracticable, and thus numerosity is satisfied.

**Commonality (Fed. R. Civ. P. 23(a)(2))** - This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g.*, *Fortra*, 2025 WL 457896, at *4; *Mednax*, 2024 WL 1554329, at *4 (commonality satisfied because claims turn on adequacy of defendants' data security to protect PII and PHI); *Desue*, 2022 WL 17477004, at *4; *see also Equifax*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of commonality). Here, as in the cases cited above, the claims turn on whether Defendant's security environment, was adequate to protect the Settlement Class's Private Information. That inquiry can be fairly resolved because it revolves around evidence that does not vary between members—at least for purposes of settlement—for all Settlement Class Members at once. Indeed, the Settlement Class Members each had their Private Information impacted in the Data Incident. *See Fortra*, 2025 WL 457896, at *4.

**Typicality (Fed. R. Civ. P. 23(a)(3))** - The commonality and typicality analyses often overlap, as they are both focused on whether a sufficient nexus exists between the legal claims of

the named class representatives and those of individual class members to warrant class certification. *Mednax*, 2024 WL 1554329, at 4. "Here, the typicality requirement is satisfied because Plaintiffs' interests are aligned with the Settlement Class in that they all received a notice letter informing them their Private Information may have been compromised as a result of the Data Incident and was therefore impacted by the same purportedly inadequate data security that allegedly harmed the rest of the Settlement Class" *Id.* Their claims are based on the same legal theories and underlying event. *Fortra*, 2025 WL 457896, at *5.

**_Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))_** - "[T]he representative parties . . . fairly and adequately protect the interests of the class." "Adequacy relates to: (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Mednax*, 2024 WL 1554329, at *5. "The determinative factor 'is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class.'" *Id.* (citation omitted); *Fortra*, 2025 WL 457896, at *5. "Here, the Class Representatives have no conflicts with the Settlement Class and have demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation." *Mednax*, 2024 WL 1554329, at *5.

Like all Settlement Class Members, Plaintiffs have claims against Defendant arising from the Data Incident that allegedly impacted their Private Information. Joint Decl. ¶ 21. Plaintiffs were similarly injured by Defendant's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement

Class as a whole. *Id.* Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages. *Id.* Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class counsel, acting in the best interest of the Settlement Class, and accepting the classwide Settlement. *Id.*

As for Class Counsel, they are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context. *See id*. ¶¶ 11-12. Like counsel in *Mednax* and *Fortra*, "Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators." 2024 WL 1554329, at *5; *Fortra*, 2025 WL 457896, at *5. Class Counsel have litigated this Action, including evaluating the claims, preparing comprehensive pleadings, serving informal discovery, consulting with data security experts, responding to Defendant's Motion to Dismiss, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. Joint Decl. ¶ 13. Accordingly, Plaintiffs and Class Counsel will adequately represent and protect the Settlement Class.

    **4. Rule 23(b)(3) -** Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

*Predominance -* "The predominance inquiry looks at 'the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" *Mednax*, 2024 WL 1554329, at *5 (quoting *Amchem*, 521 U.S. at 623).

> "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig.*, No. 2599, 2023 WL 4925368, at *6 (S.D. Fla. June 20, 2023). Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 311–16 (N.D. Cal. 2018). The focus on a Defendants' security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Id.* at 312.

*Id.* As in *Mednax*, all Settlement Class Members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person. "Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Fortra*, 2025 WL 457896, at *6 (quoting *Mednax*, 2024 WL 1554329, at *5)*. Thus, predominance is readily satisfied.

*Superiority -* "Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted." *Id.* To satisfy Rule 23(b)(3) superiority, Plaintiffs must show "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "'The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs.'" *See Fortra*, 2025 WL 457896, at *6 (citing *Mednax*, 2024 WL 1554329, at *5) (citation omitted). Here, as In *Mednax*:

> [A]djudicating individual actions would be impractical. The amount in dispute for

> each Settlement Class member is too small, the technical issues too complex, and the expert testimony and document review too costly. *Id.* Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.

2024 WL 1554329, at *5. Accordingly, a class action is the superior method of adjudicating this case. *See Fortra*, 2025 WL 457896, at *6; *see also* Joint Decl. ¶ 25.

### B.     The Settlement Should be Preliminarily Approved.

After determining settlement class certification is likely, the Court must determine whether the Settlement is worthy of preliminary approval and providing notice to the Settlement Class. The question is whether the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and considering the "*Bennett*" factors. *Mednax*, 2024 WL 1554329, at *6.

> At this juncture, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." *Morris v. US Foods, Inc.*, No. 8:20-cv-105, 2021 WL 2954741, at *7 (M.D. Fla. May 17, 2021) (quoting William B. Rubenstein, 4 *Newberg on Class Actions* § 13:10 (5th ed. Supp. 2020)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Courts have substantial discretion in approving a settlement agreement . . . , and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness*, see Manual for Compl. Lit.*, Third, § 30.42 (West 1995).

> The Rule 23(e)(2) factors are:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arms' length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

The *Bennett* factors: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants Preliminary Approval under the factors set forth in Rule 23(e)(2) and *Bennett*.

### 1.       Rule 23(e)(2) is Satisfied.

***Adequacy of Representation (Rule 23(e)(2)(A))*** - As this Court held in *Mednax*, "the first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." *Mednax*, 2024 WL 1554329, at *6; *see also Fortra*, 2025 WL 457896, at *8. Class Counsel have adequately represented the Settlement Class by fully investigating the facts and legal claims. While litigation in *Mednax* proceeded to a later stage than here before the parties agreed to the settlement in that case, Class Counsel's efforts to use informal discovery to learn what occurred to cause the Data Incident, and the Private Information impacted in the Data Incident, before attending a full-day mediation session with Hon. Diane Welsh (Ret.) allowed for arm's length and good faith negotiations, without collusion. Joint Decl. ¶¶ 8, 10. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *See id.*, ¶¶ 11-13. Also, the Class Representatives have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Action. Joint Decl. ¶ 23. Plaintiffs' respective interests are

20

coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 22. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.*

  ***The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))*** - The Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *Id.* ¶¶ 6-7, 10, 16. Class Counsel thoroughly investigated and analyzed Plaintiffs' claims, engaged in informal discovery, fully briefed motions to dismiss filed by Defendant, and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and preparing them for well-informed settlement negotiations. *Id.* ¶ 13; *see also see also Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 1554329at *6. The Settlement was reached with the assistance of a well-respected and experienced mediator. *See* Joint Decl. ¶ 8. "The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Fortra*, 2025 WL 457896, at *8 (quoting *Mednax*, 2024 WL 1554329, at *6). For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986.

  ***The Adequacy of the Settlement Relief (Rule 23(e)(2)(C))*** - Although Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation poses significant risks that make any recovery for the Settlement Class uncertain. *See* Joint Decl. ¶¶ 17-19. This Court observed in *Fortra* and *Mednax* that "data breach class actions are risky cases." *Fortra*, 2025 WL 457896, at *8 (quoting *Mednax*, 2024 WL 1554329, at *7). The Settlement's fairness is underscored by consideration of the obstacles that

the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *Id.* Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments, Credit Monitoring, and injunctive relief for all Settlement Class Members. *See Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"). Also, the Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Credit Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. Joint Decl. ¶ 29. "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Fortra*, 2025 WL 457896, at *9 (*Mednax*, 2024 WL 1554329, at *7).

***The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D)) -*** As this Court found in *Fortra* and *Mednax*, all Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits. *See Fortra*, 2025 WL 457896, at *9; *Mednax*, 2024 WL 457896, at *7. Specifically, each Settlement Class Member has the option to be reimbursed for documented losses up to $5,000.00, or they may elect to receive a flat cash payment of $100.00. California Settlement Class Members have the additional right to elect a separate and additional $100.00 California Statutory Award.  Additionally, all Settlement Class Members may elect Medical Monitoring. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 457896, at *7). Furthermore, the attorneys' fees do not impact the other terms of the Settlement, as Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. The Settlement, including disbursement

of the Settlement Class Member Benefits, is also not contingent on approval of the attorneys' fee or costs award to Class Counsel. Agreement ¶ 114. Finally, the Parties' agreements are all in the Agreement. Joint Decl. ¶ 9.

        **2.**       **The *Bennett* Factors Support Preliminary Approval.**

Although typically a consideration at the final approval stage, here, the *Bennett* factors still support Preliminary Approval. First, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class members will be afforded, including guaranteed Cash Payments, Credit Monitoring, and injunctive relief.

Second and third, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). Here, Settlement Class Members may elect Cash Payment A for reimbursement of documented ordinary losses up to $5,000.00, or they may elect Cash Payment B for a flat cash payment of $100.00, and California Settlement Class Members may receive an additional estimated$100.00. Joint Decl. ¶ 14. Additionally, Settlement Class members may also elect Medical Monitoring. *Id*.

Fourth, continued litigation would be lengthy and expensive. With *Fortra* and *Mednax* as examples, Data breach litigation is often difficult and complex. *Id.* ¶ 19. Although the Parties

entered into a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action. *Id*. ¶ 20.

Fifth, opposition to the Settlement, if any, is better considered at the final approval stage, after Notice to the Settlement Class. *Mednax*, 2024 WL 1554329, at *7.

Sixth, despite resolving at an early stage of litigation, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery). This Action has been thoroughly investigated by counsel experienced in data breach litigation. Joint Decl. ¶¶ 4, 6-7, 12-13. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.*

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members. *See In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2024 WL 5362098, at *9-10 (S.D. Fla. Sept. 24, 2024) ("The Court finds the relevant *Bennett* factors are satisfied.")

### C. The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator.

Plaintiffs seek appointment as Class Representatives. Plaintiffs have cooperated with Class Counsel and assisted in the preparation of the complaints and in settlement of the Action. Joint Decl. ¶¶ 21, 23. Moreover, Plaintiffs are committed to continuing to assist Class Counsel through Final Approval. *Id.* Because Plaintiffs are adequate, the Court should appoint them as Class Representatives. *See* § V.A.3., *supra*.

For the same reasons discussed above for adequacy of representation, and when the Court

appointed them as Interim Co-Lead Class Counsel [ECF No. 6], the Court should appoint Mariya Weekes and Jeff Ostrow as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field with extensive experience prosecuting and resolving complex class actions. Before commencing litigation, they investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Joint Decl. ¶ 4. Class Counsel has devoted substantial time and resources to this Action and will continue to do so. *Id.* ¶ 13.

Finally, subject to Court approval, the Parties have agreed Epiq should be the Settlement Administrator. Epiq is a well-respected and reputable third-party administrator that was mutually selected by the Parties and has long history of successful class action administrations, including for data breach class action settlements. *Id.* ¶ 29.

### D.   The Notice Program Contains the Best Notice Practicable.

Under Fed. R. Civ. P. 23(e)(1), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable

effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Fed. R. Civ. P. 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. The Parties negotiated the form of the Notices with the Settlement Administrator's help. Notice will be disseminated to all persons who fall within the Settlement Class definition and whose names and addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes. In addition, Epiq will administer the Settlement Website containing relevant information about the Settlement. Further, the Postcard Notice includes, among other information: a description of the material Settlement terms; how to submit a Claim Form; the Claim Form Deadline; the Opt-Out Deadline for Settlement Class Members to opt-out of the Settlement Class; the Objection Deadline for Settlement Class Members to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Agreement ¶ 88. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *Id.* ¶ 112. Thus, the Court should approve the Notice Program, including the form and content of the Notices. Agreement Exs. 1-2. *See Fortra*, 2024 WL 5362098, at *10-11 (approving substantially similar notice program)

### E.    Proposed Schedule of Post-Settlement Events

Plaintiffs respectfully propose the schedule below for the Court's review and approval. If the Court agrees, Plaintiffs request that the Court schedule the Final Approval Hearing for the week of **November 17, 2025**, or such later date available on the Court's calendar.

| | |
|---|---|
| Deadline to commence Notice Program | Within 20 days of the Preliminary Approval Order |
| Deadline to complete Notice Program | 45 days before the initial scheduled Final Approval Hearing date |
| Deadline for filing Motion for Final Approval | 45 days before the initial scheduled Final Approval Hearing date |
| Opt-out Deadline | 30 days before the initial scheduled Final Approval Hearing date |
| Objection Deadline | 30 days before the initial scheduled Final Approval Hearing date |
| Claim Form Deadline | 15 days before the initial scheduled Final Approval Hearing date |
| Final Approval Hearing | The week of **November 17, 2025** (or soon thereafter depending on the Court's availability) |

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request the Court: (1) preliminarily approve the Settlement; (2) certify the Settlement Class for settlement purposes only; (3) approve the Notices and Notice Program, including the opt-out and objection procedures; (4) approve the Claim Form and Claims Process; (5) appoint Plaintiffs as Class Representatives; (6) appoint Jeff Ostrow and Mariya Weekes as Class Counsel; (7) appoint Epiq as the Settlement Administrator; and (8) enter the proposed Preliminary Approval Order, attached as Exhibit A-4.

## <u>CERTIFICATE OF LOCAL RULE 7.1(a)(3) CONFERRAL</u>

Plaintiffs' counsel certifies that Plaintiffs have conferred with Defendant regarding the relief requested in this Motion, and Defendant does not oppose the relief requested.

Dated: July 11, 2025                    Respectfully submitted,

                                        /s/ *Jeff Ostrow*
                                        Jeff Ostrow FBN 121452
                                        **KOPELOWITZ OSTROW P.A.**
                                        1 West Las Olas Blvd., Ste. 500
                                        Fort Lauderdale, FL 33301
                                        Tel : (954) 332-4200
                                        Fax: (954) 525-4300
                                        ostrow@kolawyers.com

                                        MARIYA WEEKES FBN 56299
                                        **MILBERG COLEMAN BRYSON**
                                        **PHILLIPS GROSSMAN, PLLC**
                                        201 Sevilla Avenue, 2nd Floor
                                        Coral Gables, FL 33134
                                        Tel: (786) 879-8200
                                        Fax: (786) 879-7520
                                        mweekes@milberg.com

                                        *Interim Co-Lead Class Counsel*