## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 1:25-cv-20117-RAR

ASHLEY OWINGS, ALEKSANDR
MITERIN, AILEMA GASCON, BARBARA
MASTEN, COURTNEY HOPPER,
ROBERT OWEN, JEANNE AUER,
JENNIFER CALDWELL-JOCK, and H.P.
through her guardian LAUREN G.
SAVENER, on behalf of themselves, and all
others similarly situated,

        Plaintiffs,

    v.

MEDUSIND, INC.,

        Defendant.

---

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
### OF CLASS ACTION SETTLEMENT AGREEMENT AND
### APPLICATION FOR ATTORNEYS' FEES AND COSTS

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Unopposed Motion for

Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs,

supported by the Joint Declaration of Lead Counsel ("Joint Decl."), attached as **Exhibit B**, and the

Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice

Program ("Admin. Decl."), attached as **Exhibit C**.

On July 22, 2025, this Court preliminarily approved the Settlement, which provides for

substantial Settlement Class Member Benefits, including: (1) a non-reversionary, all cash

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of
the Settlement Agreement, attached as **Exhibit A**.

$5,000,000.00 Settlement Fund, from which Settlement Class Members may elect to receive Cash Payments and Credit Monitoring; and (2) non-monetary injunctive relief consisting of comprehensive and costly security measures that Defendant implemented. The Settlement Fund will be used to pay Settlement Class Member Benefits, Settlement Administration Costs, and Court-awarded attorneys' fees and costs.

Plaintiffs and Class Counsel now move the Court for Final Approval and apply for an award of attorneys' fees and costs. The Settlement satisfies all the criteria for Final Approval. Currently, there are no objections and only two Settlement Class Members have opted-out. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## I.      INTRODUCTION AND PROCEDURAL HISTORY

Defendant is a medical and dental billing and software company that provides services to health providers throughout the country. *See generally* Complaint, ECF No. 1. Defendant's healthcare customers entrusted Defendant with the Private Information of their patients, including their names, mailing addresses, email addresses, telephone numbers, health insurance and billing information (insurance policy numbers or claims/benefits information), payment information (debit/credit card numbers or bank account information), health information (medical history, medical record numbers, or prescription information), and government identification (Social Security numbers, taxpayer ID numbers, driver's licenses numbers, or passport numbers). *Id.*

On December 29, 2023, Defendant detected suspicious activity on its computer systems

and later confirmed that cybercriminals accessed information stored on those systems. *Id.* On or about January 7, 2025, Defendant began sending notice letters to approximately 700,000 individuals advising them that their Private Information may have been impacted in the Data Incident. *Id.*

On January 9, 2025, Plaintiff Owings filed the first-class action lawsuit for the unlawful exposure of her and all similarly situated individuals' Private Information seeking money damages and injunctive relief. Agreement ¶ 62. Thereafter, a number of similar lawsuits with similar claims and overlapping classes were filed against Defendant regarding the Data Incident. Plaintiffs' counsel in the actions conferred and decided to work cooperatively and litigate their actions in a single action. *Id.* ¶¶ 63-69.

On January 15, 2025, Plaintiff Owings filed a Motion to Consolidate Actions, Appoint Interim Class Counsel, and Set Deadline for Filing of Consolidated Complaint. *Id.* ¶ 70. On January 20, 2025, the Court granted the motion to consolidate and appointed Jeff Ostrow and Mariya Weekes as Interim Co-Lead Class Counsel. *Id.*

On February 18, 2025, Plaintiffs filed their consolidated class action complaint seeking a nationwide class and a California subclass of those impacted in the Data Incident alleging claims for negligence, negligence per se, breach of third-party beneficiary, breach of contract, unjust enrichment, and statutory claims for violations of California statutes. *Id.* ¶ 71. On April 11, 2025, Defendant filed its motion to dismiss the Complaint; on May 15, 2025, Plaintiffs filed a response in opposition; and on June 10, 2025 Defendant filed its reply. *Id.* ¶ 72.

The Parties decided to conserve resources and explore resolution of the Action. *Id.* ¶ 73. The Parties set a mediation with former federal magistrate judge and experienced class action mediator, Hon. Diane Welsh (Ret.) with JAMS. *Id.* In advance of mediation, Plaintiffs requested

and Defendant produced informal discovery requests related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident, the states in which they resided on the date of the Data Incident, the categories of Private Information involved, and the security enhancements taken since the Data Incident to better protect its computer systems for future data incidents. *Id.* ¶ 74. The Parties also exchanged detailed mediation statements outlining their positions with respect to liability, damages, and settlement. *Id.*

The mediation took place in person in Philadelphia on June 10, 2025. *Id*. ¶ 75. After a full day of negotiations, the Parties agreed to the material Settlement terms. *Id*. To avoid the risk and expense of litigation, the Parties agreed to a settlement to resolve all of Plaintiffs' claims on a classwide basis. *Id*. As demonstrated below, the Settlement provides significant relief for the Settlement Class (including the California Settlement Subclass), including a non-reversionary all cash $5,000,000.00 Settlement Fund and valuable injunctive relief.

The Parties filed a Notice of Settlement on June 12, 2025. [ECF No. 47.] Over the next five weeks, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents. Joint Decl. ¶ 9. The Agreement was executed on July 11, 2025. *Id*. The Parties did not discuss attorneys' fees and costs until after they agreed on all material terms. *Id.*

Plaintiffs filed their Motion for Preliminary Approval on July 11, 2025, and the Court granted the motion on July 22, 2025. [ECF No. 51, 52]. The Notice Program has now been completed in compliance with the Agreement and the Preliminary Approval Order and the Claim Process is ongoing. *See generally* Admin. Decl.; Joint Decl. ¶¶ 21-41.

## II.  SUMMARY OF THE SETTLEMENT

**A.  Settlement Class and California Settlement Subclass –** Plaintiffs seek Final Approval on behalf of the following Settlement Class and California Settlement Subclass:

> [A]ll living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.

A subset of the Settlement Class is the California Settlement Subclass which includes "Settlement Class Members residing in California as of December 29, 2023." Excluded from the Settlement Class are (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; (4) the mediator; and (5) the Parties' counsel in the Action. Agreement ¶ 55. Also excluded are any Settlement Class Members who timely opt-out of the Settlement.

**B.      Settlement Fund –** The Settlement provides for a non-reversionary $5,000,000 all cash Settlement Fund. *Id.* ¶ 58. It will be used to pay: (1) Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Settlement Administration Costs. *Id.* ¶ 77. Defendant fully funded the Settlement Fund within 40 days of Preliminary Approval. *Id.* ¶ 76.

**C.      Settlement Class Member Benefits –** When submitting a Valid Claim, Settlement Class Members must choose either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. *Id.* ¶ 80. In addition, each California Settlement Subclass Member who submits a Valid Claim may elect to receive a separate California Statutory Award. *Id.* ¶¶ 12, 80. All Settlement Class Members may also elect to receive Credit Monitoring. *Id.* ¶ 80. Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the value of all Valid Claims received. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Cash Payment or Credit Monitoring. *Id.*

**Cash Payments -** Settlement Class Members who elect Cash Payment A – Documented Losses may receive up to $5,000.00 for reasonable documented losses related to the Data Incident. *Id.* ¶ 81.a. Alternatively, a Settlement Class Member may elect to receive Cash Payment B – Alternate Cash, which is a cash payment that does not require documentation in the estimated amount of $100.00. *Id.* ¶ 81.b. In addition to Cash Payment A or Cash Payment B, California Settlement Subclass Members may elect to receive the California Statutory Award in the estimated amount of $100.00. *Id.* ¶ 81.c.

**Credit Monitoring -** In addition to Cash Payments, Settlement Class Members may also elect two years of credit monitoring services, which includes: (i) real time monitoring of credit files; (ii) web-based monitoring of personal identifiable information including social security numbers, banking information and credit/debit information, medical ID numbers, email addresses, and phone numbers; and (iii) access to Fraud Consultation and Identity Theft Restoration services, with access to agents to help investigate and resolve instances of identity theft. *Id* ¶ 81.d. All costs associated with the provision of Credit Monitoring shall be paid exclusively out of the Settlement Fund. *Id.*

**Injunctive Relief -** Prior to Final Approval, Defendant will provide Class Counsel with a written attestation regarding the security measures, including the costs associated therewith, it implemented following the Data Incident (or will implement) to better protect the Settlement Class Members' Private Information from future disclosure resulting from a subsequent data incident. *Id.* ¶ 81.e. The costs of any such security measures on the part of Defendant were paid or will be paid separately by the Defendant and will not come out of the Settlement Fund. *Id.*

**D.     Release –** Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement will be bound by the Settlement, including the Releases that discharge

the Released Claims against the Released Parties. *Id.* § XIV. The Released Claims are narrowly tailored and are only claims arising out of or relating to the Data Incident. Joint Decl. ¶ 11.

**E.     Disposition of Residual Funds –** Any funds remaining in the Settlement Fund 240 days after Settlement Class Members receive an email from the Settlement Administrator to select a form of payment shall be distributed to a *cy pres* recipient approved by the Court. Agreement ¶ 115. The Parties propose the National Cybersecurity Alliance (https://www.staysafeonline.org/).

**F.     Attorneys' Fees and Costs –** Pursuant to the Agreement, Plaintiffs request an attorneys' fee award of one-third of the Settlement Fund ($1,666,666.66) and $32,384.30 for litigation costs. Agreement ¶ 112; Joint Decl. ¶ 29. The Notices advised the Settlement Class Members of the amount of attorneys' fees Class Counsel intended to request, and currently no one has objected to the amount requested. Agreement § XII; Joint Decl. ¶ 12.

## III.     NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS

*Notice Program* – The Settlement Administrator sent the CAFA Notices required by 28 U.S.C. § 1715. Admin. Decl. ¶ 20. Following receipt of the Class List, the Settlement Administrator implemented the Notice Program, which consisted of sending Postcard Notice to Settlement Class Members and a Long Form Notice, which is available on the Settlement Website and which the Settlement Administrator mailed to any Settlement Class Member who requested one. *Id.* ¶¶ 23-27. The Settlement Administrator's Declaration details the process followed to send 702,081 double-sided Postcard Notices to 702,115 Settlement Class Members (34 Settlement Class Member records did not have a physical mailing address and were not sent Notice). *Id*. ¶¶ 23-24. The Postcard Notice clearly and concisely summarized the Settlement and the legal rights of the Settlement Class Members and directed Settlement Class Members to visit the Settlement Website for additional information. *Id*. The Settlement Administrator performed reasonable address traces

for Postcard Notices returned undeliverable and then re-mailed 33,115 to Settlement Class Members. *Id.* ¶ 26. As of November 25, 2025, individual notice efforts have reached approximately 94% of the Settlement Class Members. *Id.* ¶ 28.

Additionally, as of November 25, 2025, Epiq mailed 560 Settlement packages, including the Long Form Notice and Claim Form, in response to requests via the toll-free telephone number or other means from Settlement Class Members. *Id.* ¶ 27.

On August 11, 2025, the Settlement Administrator established a dedicated Settlement Website (www.medusinddataincidentsettlement.com) for Settlement Class Members to obtain detailed information about the Action and review important documents, including the Complaint, Agreement, Long Form Notice, Claim Form, Motion for Preliminary Approval, and Preliminary Approval Order. *Id.* ¶ 29. This Motion for Final Approval will be posted upon filing. The Settlement Website also includes relevant dates, answers to frequently asked questions, opt-out and objection instructions, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* As of November 25, 2025, there have been 19,870 unique visitor sessions to the Settlement Website, and 72,540 web pages have been presented. *Id.*

Also, on August 11, 2025, the Settlement Administrator established a toll-free telephone number for Settlement Class Members to call for Settlement information and/or to request a Long Form Notice and Claim Form. *Id.* ¶ 30. As of November 26, 2025, there have been 3,789 calls to the toll-free telephone number representing 9,642 minutes of use. *Id.*

A postal mailing address and email address were established and remain available to contact the Settlement Administrator to request additional information or ask questions. *Id.* ¶ 31.

***Claim Process*** – The timing of the Claim Process was structured to ensure that all Settlement Class Members had adequate time to review the Settlement terms, compile documents

supporting their Claims, and decide whether to submit a Claim Form in, opt-out of, or object to, the Settlement. Settlement Class Members may continue to submit Claim Forms online or by mail by the December 29, 2025 Claim Form Deadline. *Id.* ¶ 33. Settlement Class Members have the option of requesting a digital cash payment or a traditional paper check on the Claim Form. *Id.* As of November 25, 2025, Epiq has received 39,918 Claim Forms (10,631 online and 29,287 by mail). *Id.* ¶ 34. These numbers are preliminary and expected to increase. *Id.* Claim Forms are still subject to quality control review, including full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the number of Claims.

> ***Opt-Outs and Objections*** – The Objection and Opt-Out Periods end on December 14, 2025. *Id.* ¶ 32. As of November 25, 2025, the Settlement Administrator received two completed opt-out requests and no objections. *Id.* The Parties are not aware of any objections. Joint Decl. ¶ 12.

## IV.   ARGUMENT

### A.   The Settlement Class and California Settlement Subclass Should Be Certified, and the Appointments of Class Representatives, Lead Counsel, Class Counsel, and the Settlement Administrator Should Be Affirmed.

The Motion for Preliminary Approval detailed the bases for certifying the Settlement Class and California Settlement Subclass pursuant to Fed. R. Civ. P. 23(a) and (b)(3). In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class and California Settlement Subclass at the Final Approval stage, finding the following requirements were all met: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. [ECF No. 231 at 7-15]. Nothing has changed since Preliminary Approval was granted and the Settlement Class (including the California Settlement Subclass) was provisionally certified. Therefore, for brevity's

sake, Plaintiffs do not repeat their arguments in support of class certification and instead incorporate by reference their arguments from the Motion for Preliminary Approval. [ECF No. 51 at 11-19].

Plaintiffs' appointment as the Class Representatives should be affirmed as they remain adequate representatives. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of Jeff Ostrow and Mariya Weekes as Class Counsel for the Settlement Class (including the California Settlement Subclass). Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, as the Court has observed in this Action and others, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Joint Decl. ¶¶ 15-17. Class Counsel has devoted time and resources to this Action and will continue to do so. *Id.* ¶¶ 17, 33.

Finally, the Court should confirm its appointment of Epiq as the Settlement Administrator.

**B.      The Settlement Should be Finally Approved.**

The Preliminary Approval Order found the Court would be likely to finally approve the Settlement after considering and finding the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and the "*Bennett*" factors. [DE# 176 at 15-19].  Now, the Court should grant

10

Final Approval considering those same factors, being able to now judge the Settlement Class

Members' positive reaction to the Settlement with no objections and 39,918 Claims to date.

The Rule 23(e)(2) factors are:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include the following: (1) the likelihood of success at trial; (2) the range of

possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement

is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the

substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which

the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

***Adequacy of Representation (Rule 23(e)(2)(A))*** - This first factor "weighs heavily in favor

of granting preliminary approval because both Class Counsel and the Class Representative have

adequately represented the Class." *In re Fortra File Transfer Software Data Sec. Breach Litig.*,

No. 24-MD-03090, 2025 WL 2675178, at *9 (S.D. Fla. Sept. 17, 2025) (citing *In re Fortra File

Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *8

(S.D. Fla. Feb. 11, 2025), and *In re Mednax Services, Inc., Customer Data Sec. Breach Litig.*, No.

21-MD-02994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024)). While *Mednax*

proceeded to a later stage than here before the parties agreed to settle, Class Counsel thoroughly

investigated and analyzed Plaintiffs' claims. Defendant's motion to dismiss was fully briefed and

decided. [ECF Nos. 35, 40, 46]. Class Counsel also consulted and retained liability and damage

experts enabling them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *See* Joint Decl. ¶¶ 7, 17; *see also Mednax*, 2024 WL 1554329 at *6. Class Counsel used informal discovery to learn what caused the Data Incident and the Private Information impacted, before attending a full-day mediation session. Joint Decl. ¶¶ 6-7. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted their time and resources to vigorous litigation. *See id.*, ¶¶ 16-17.

Also, the Class Representatives have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Action. Joint Decl. ¶ 28. Plaintiffs are committed to continue prosecuting this Action through Final Approval and protecting the interests of the Settlement Class (including the California Settlement Subclass). *Id.* ¶ 27. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class Members. *Id.* ¶ 26. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id.*

***The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and Bennett Factors 5-6)*** - The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake, and with the assistance of the mediator, Judge Welsh (Ret.). *Id.* ¶¶ 8, 10, 15-16. "The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at

*8 (quoting *Mednax*, 2024 WL 1554329 at *6)). Though the Settlement was reached at any early stage, the record reflects that this Action has been thoroughly investigated by counsel experienced in data breach litigation. Joint Decl. ¶ 25. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.* ¶ 17. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery).

Currently there is no opposition to the Settlement and only two opt-outs. Lead Counsel will respond to any later filed valid objections, if any, before the Final Approval Hearing.

**The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and Bennett Factors 1-4)** - Although Plaintiffs and Class Counsel believe the claims asserted are meritorious and the Settlement Class would ultimately prevail at trial, continued, complex, and expensive litigation against Defendant poses significant risks that make any recovery for the Settlement Class Members uncertain. Joint Decl. ¶ 23. Data breach class actions are risky. *Fortra*, 2025 WL 2675178, at *10; *Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 1554329 at *7. The Settlement's fairness is underscored by the obstacles the Plaintiffs would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Id.*; Joint Decl. ¶ 24. Given those risks, the Settlement provides outstanding benefits, including Cash Payments, Credit Monitoring, and injunctive relief for all Settlement Class Members. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation

because [they] are uncertain and class certification is rare")

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the Court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming order that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate"). Here, Settlement Class Members may elect Cash Payments and/or Credit Monitoring. Agreement ¶¶ 81.a.-c.

The following recent examples of approved data breach settlements from around the country demonstrate how the instant Settlement compares very favorably to other similar common fund data breach settlements: *Fortra*, No. 24-MD-03090 ($27,000,000 for six million class members); *Mednax*, No. 21-MD-02994-RAR ($6,000,000 for 2.7 million class members); *Summers v. Sea Mar 16 Comm. College*, No. 22-2-0073-7 SEA (Super. Ct. Wash.) ($4,400,000 for 1.2 million class members); *Owens v. U.S. Radiology Specialists, Inc., et al.*, No. 22 CVS 17797 (Mecklenburg Cty., NC) ($5,050,000 for 1.3 million class members); *In re Wright & Filippis, LLC Data Sec. Breach*, No. 2:22-cv-12908-SFC (E.D. Mich.) ($2,900,000 for 877,584 class members); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17- md-2807 (N.D. Ohio) ($4,325,000 for 1.5 million class members); *Kostka v. Dickey's Barbeque Restaurants, Inc.*, No. 3:20-CV-03424-K, 2023 WL 3914266 (N.D. Tex. June 6, 2023) ($2,350,000 for 725,000 class members); *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-04172-AAS, 2024 WL 3104286, at *4 (M.D. Fla. June 24, 2024) ($7,250,000 for 2.9 million class members).

Also, the Claim Process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Joint Decl. ¶ 14. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check and Credit Monitoring, if elected. *Id.* The Settlement Administrator is highly qualified to manage the entire process. *Id.* "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329 at *7)).

Finally, the Parties' agreements are all in the Agreement. Joint Decl. ¶ 9.

***The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))*** - As this Court found in *Fortra* and *Mednax*, all Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits. *See Fortra*, 2025 WL 2675178, at *11; *Fortra*, 2025 WL 457896, at *9; *Mednax*, 2024 WL 1554329, at *7. Specifically, each Settlement Class Member has the option to claim the same Settlement Class Member Benefits. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 2675178, at *11 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7)). Further, the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all other material Settlement terms. Joint Decl. ¶ 9. The Settlement, including disbursement of the Settlement Class Member Benefits, is also not contingent on approval of the attorneys' fees and costs award. Agreement ¶ 114.

Thus, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members as required by the Rule 23(e)(2) and *Bennett* factors.

### C.      Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.

The Court-approved Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. *See supra* at 7-8. Settlement Class Members received Notice of the settlement and have the opportunity to be heard and participate in the Action. See Fed. R. Civ. P. 23(c)(2)(B). The Court exercised its discretion to approve a reasonable Notice Program. As the Court held when granting Preliminary Approval, the Postcard Notice sent directly to Settlement Class Members and the Long Form Notice posted on the Settlement Website is the best notice practicable under the circumstances and constitutes due and sufficient notice to Settlement Class Members. [ECF No. 52 at 20-21]. The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notices included, among other information: a description of the Settlement's material terms; how to submit a Claim Form; the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. *See* Admin. Decl., Attachments. The Notice Program also included a toll-free number to ask Settlement-related questions and the Settlement Website containing relevant Settlement information. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as the Notices informed the Settlement Class Members that Class Counsel may apply for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *Id.*

## V.     APPLICATION FOR ATTORNEYS' FEES AND COSTS

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $1,666,666.66, which is equal to one-third of the Settlement Fund, and $32,384.30 for litigation costs. Joint Decl. ¶ 29. The requested amounts are within the range of reason when analyzed under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

### A.     The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Fortra*, 2025 WL 2675178, at *13; *Fortra*, 2025 WL 457896, at *11. The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at 478). "As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Id.* (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but

the amount is subject to court approval."); *Fortra*, 2025 WL 2675178, at *13; *Fortra*, 2025 WL 457896, at *12. Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons. *Fortra*, 2025 WL 2675178, at *13; *Fortra*, 2025 WL 457896, at *12.

In this Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. *Id.* In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774. *See also Fortra*, 2025 WL 2675178, at *14; *Fortra*, 2025 WL 457896, at *12.

"The Court has discretion in determining the appropriate fee percentage." *Fortra*, 2025 WL 2675178, at *14; *Fortra*, 2025 WL 457896, at *12. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund" – though "an upper limit of 50 percent of the fund may be stated as a general rule." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in view of the circumstances of the

case). Class Counsel's fee request falls within this accepted range and is consistent with the percentage awarded in the *Fortra* settlements approved in this Court. *See Fortra*, 2025 WL 2675178, at *14; *Fortra*, 2025 WL 457896, at *11-12.

      **B.**    **Application of the *Camden I* Factors Supports the Requested Fee.**

      The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1)    the time and labor required;
(2)    the novelty and difficulty of the relevant questions;
(3)    the skill required to properly carry out the legal services;
(4)    the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5)    the customary fee;
(6)    whether the fee is fixed or contingent;
(7)    time limitations imposed by the clients or the circumstances;
(8)    the results obtained, including the amount recovered for the clients;
(9)    the experience, reputation, and ability of the attorneys;
(10)   the "undesirability" of the case;
(11)   the nature and the length of the professional relationship with the clients; and
(12)   fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.[2] These twelve factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

---

[2] The seventh and eleventh factors are relatively neutral, though it has certainly been important to Class Counsel to efficiently obtain the Settlement benefits for the Settlement Class impacted by the Data Incident.

### 1.     The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded a considerable amount of time and labor, making this fee request reasonable. Joint Decl. ¶ 33. The organization of Class Counsel ensured the work was coordinated to maximize efficiency and minimize duplication of effort. *Id*. Class Counsel devoted substantial time to investigating the claims. *Id.* Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Significant time and resources were also dedicated to working with experts, exchanging informal discovery, consolidating and organizing the related actions, responding to the motion to dismiss, and preparing for and attending a successful mediation. *Id.* Time was then devoted to negotiating and drafting the Agreement, the Preliminary Approval process, and to all actions required thereafter by the Agreement and the Preliminary Approval Order. *Id*. Class Counsel spent substantial time leading up to seeking Final Approval, addressing the Notice Program, Claim Process, and preparing this Motion for Final Approval. *Id.* Time will also be spent preparing for and attending the Final Approval Hearing. *Id.* Finally, Class Counsel will devote further time to Settlement administration should Final Approval be granted to ensure Valid Claims are paid and the Settlement if fully implemented. *Id.*

Class Counsel's coordinated work paid dividends. *Id.* ¶ 34. Each of the above-described efforts was essential to achieving the Settlement. *Id.* Class Counsel's time and resources devoted to prosecuting and settling this Action justify the requested fee. *Id.*

### 2.     The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel.

This Court has witnessed the quality of Class Counsel's legal work, which conferred substantial benefits on the Settlement Class Members in the face of significant litigation obstacles. *Id.* ¶ 35. This factor weighs heavily in support of the requested attorneys' fee award. In fact, courts routinely recognize the novelty and difficulty of the questions present in a case as a "significant

factor to be considered in making a fee award." *Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. l:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) (recognizing that "[data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are not always predictable."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex.").

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3. Defendant is represented by extremely capable counsel who are worthy, highly competent adversaries. Joint Decl. ¶ 20; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997).

### 3.     *Class Counsel Achieved a Successful Result.*

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result, with $5,000,000.00 recovered for the Settlement Class Members, affording them meaningful Settlement benefits designed to meet the typical repercussions faced by consumers following a data breach. The risk involved is emphasized by the fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *See, e.g.*, *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (decertifying data breach class); *Theus v. Brinker Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025) (denying motion for class certification); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-mn-

02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification); *FultonGreen,* 2019 WL 4677954 at *8 (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Joint Decl. ¶ 24. Considering Defendant has compelling defenses, continuing to pursue this case posed a significant risk for Plaintiffs and the Settlement Class Members. *Id.* Therefore, Class Counsel's risks weigh in favor of Class Counsel's requested attorneys' fee.

### 4. *Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis and Lost Opportunity for Other Employment.*

In undertaking to prosecute this case entirely on a contingent fee basis, Class Counsel assumed risk of nonpayment or underpayment, while foregoing the opportunity to work on other cases. *Id.* ¶ 32. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)).

Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial costs they have advanced. Joint Decl. ¶¶ 30-34. Public policy concerns— ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested attorneys' fee. Joint Decl. ¶ 36. In the court's words:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

### 5.    The Requested Fee Comports with Fee Awards in Similar Cases.

The attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the Eleventh Circuit and in the Southern District. *See Fortra*, 2025 WL 2675178, at *13-14 (awarding 33.33%); *Fortra*, 2025 WL 457896, at *11-12 (same); *In re Indep. Living Sys. Data Breach Litig.*, No. 1:23-cv-21060-Williams (S.D. Fla. Nov. 24, 2025), ECF No. 106 (same); *Cravens v. Garda CL Southeast, Inc., et al.*, No. 9:24-CV-80400-BER, 2025 U.S. Dist. LEXIS 178343, at *29 (S.D. Fla. Sept, 11, 2025) (same); *Mednax*, 2024 WL 4415214, at *5 (noting district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement). *See also, e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding 35%); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33 % of settlement).

Examples of attorneys' fee awards of 33.33% or higher in data breach cases include the two *Fortra* MDL, *Independent Living*, and *Garda* settlements cited in the prior paragraph and the following: *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (approving 35% of the settlement fund); *In re Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-MD-3126-BMM, 2025 U.S. Dist. LEXIS 211590 (D. Mont. Oct. 23, 2025) (approving 33.33% of the Advance Auto Parts settlement fund); *In re Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-

MD-3126-BMM, 2025 U.S. Dist. LEXIS 211498 (D. Mont. Oct. 23, 2025) (approving 33.33% of the Neiman Marcus settlement fund); *Gambino, et al. v. Berry Dunn McNeil & Parker, LLC, et al.*, No. 2:24-cv-00146-JAW (D. Maine) (approving 33.33% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), DE# 48 (approving 33.33% of the settlement fund); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (approving one-third of the settlement fund); *Kondo, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC, DE# 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), DE# 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *In re Lincare Holdings Inc. Data Breach Litig.*, 2024 WL 3104286, at *3 (same); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, DE# 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, DE# 47 (E.D. Ky. Oct. 25, 2023) (same); *Kostka*, 2023 WL 3914266, at *3 (same); *In re: Forefront Data Breach Litigation*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same).

Class Counsel's request is also reasonable considering the market rate in the private marketplace "where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto* v. *Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007). As such, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id.* Indeed, this Court has recognized a fee of 33.33% "is at the market rate of what the Class could have negotiated with counsel . . . as a traditional contingency fee arrangement at the outset of the case." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016); *see also In re Checking Account Overdraft Litig.,* 830 F.Supp.2d 1330, 1366 (S.D. Fla. 2011) (acknowledging

class counsel's requested fee of 30% "falls on the low end of the average in the private marketplace" where contingency fees of up to 40% are customary in the private marketplace).

### 6.    *The Litigation Costs Are Reasonable.*

Class Counsel request reimbursement of $32,384.30 for litigation costs that Class Counsel incurred and paid in connection with the prosecution of the Action and the Settlement. The litigation costs include fees related to filing, service, experts, mediation, and travel. Joint Decl. ¶ 29. Ordinary law firm overhead costs, including postage and legal research, are not included. Plaintiffs' attorneys are entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the course of activities benefitting the class. *Fortra*, 2025 WL 2675178, at * 14; *Fortra*, 2025 WL 457896, at *12; *Morgan*, 301 F. Supp. 3d at 1258. Further, pursuant to Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Fortra*, 2025 WL 457896, at *12 (citing *Behrens*, 118 F.R.D. at 549 (noting plaintiffs' counsel is entitled to be reimbursed for reasonable expenses from the class fund).

## V.    CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter the  Final Approval Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class and California Settlement Subclass for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives; Jeff Ostrow and Mariya Weekes as Class Counsel; and Epiq as Settlement Administrator; (5) awarding Class Counsel $1,666,666.66 for attorneys' fees and $32,384.30 for costs; (6) approving payment of any outstanding or future Settlement Administration Costs; (7) overruling timely objections, if any; and (8) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as ***Exhibit D***.

## <u>CERTIFICATE OF LOCAL RULE 7.1(a)(3) CONFERRAL</u>

Class Counsel certify they have conferred with Defendant's Counsel regarding the relief requested herein, and the Defendant does not oppose the relief requested.

November 26, 2025.                                    Respectfully submitted,

                                                      /s/ *Jeff Ostrow*
                                                      Jeff Ostrow FBN 121452
                                                      **KOPELOWITZ OSTROW P.A.**
                                                      1 West Las Olas Blvd., Ste. 500
                                                      Fort Lauderdale, FL 33301
                                                      Tel: 954.332.4200
                                                      ostrow@kolawyers.com

                                                      Mariya Weekes FBN 56299
                                                      **MILBERG PLLC**
                                                      201 Sevilla Avenue, 2nd Floor
                                                      Coral Gables, FL 33134
                                                      Tel: (786) 879-8200
                                                      mweekes@milberg.com

                                                      *Class Counsel*