## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-CV-20117-RAR

**ASHLEY OWINGS**, *et al*.,
*on behalf of themselves and*
*all others similarly situated*,

      Plaintiffs,

v.

**MEDUSIND, INC.,**

      Defendant.

_____/

### ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS

**THIS CAUSE** comes before the Court on Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs ("Motion for Final Approval"), [ECF No. 56],[1] filed on November 26, 2025, requesting entry of an order: (1) granting Final Approval of the Settlement; (2) certifying the Settlement Class and California Settlement Subclass for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) affirming the appointments of the Plaintiffs as Class Representatives, Class Counsel, and the Settlement Administrator; (4) awarding attorneys' fees and costs; (5) approving payment of the Settlement Administration Costs; (6) overruling timely objections, if any; and (7) entering final judgment dismissing the Action with prejudice as to the Defendant and reserving jurisdiction over Settlement implementation.  The Court held a hearing on the Motion for Final Approval on January 26, 2026.  [ECF No. 61].

---

[1] All capitalized terms used herein have the same meanings as those defined in Section II of the Settlement Agreement attached to the Motion for Final Approval as ***Exhibit A***.  *See* [ECF No. 56-1].

Having already analyzed the Settlement in entering the Preliminary Approval Order, [ECF No. 52], and having again carefully reviewed the Motion for Final Approval, the proposed Settlement and its exhibits, all relevant filings, the record, and argument from the Parties' counsel, the Court finds the Settlement Class and California Settlement Subclass should be finally certified, the Settlement satisfies the Final Approval criteria, and the Application for Attorneys' Fees and Costs should be granted.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Final Approval, [ECF No. 56], is **GRANTED** as set forth herein.

## <u>BACKGROUND</u>

The relevant procedural and factual background of this Action is detailed in the Motion for Final Approval.  Below is a summary of facts pertinent to the findings and rulings in this Final Approval Order.

Defendant is a medical and dental billing and software company that provides services to providers throughout the country.  *See generally* Complaint, [ECF No. 1].  Defendant's healthcare customers entrusted Defendant with the Private Information of their patients, including their names, mailing addresses, email addresses, telephone numbers, health insurance and billing information (insurance policy numbers or claims/benefits information), payment information debit/credit card numbers or bank account information), health information (medical history, medical record numbers, or prescription information), and government identification (Social Security numbers, taxpayer ID numbers, driver's licenses numbers, or passport numbers).  *Id*.

On December 29, 2023, Defendant detected suspicious activity on its computer systems and later confirmed that cybercriminals accessed certain information stored on those systems.  *Id*.  On or about January 7, 2025, Defendant began sending notice letters to over 700,000 individuals advising them that their Private Information may have been impacted in the Data Incident.  *Id*.  On

January 9, 2025, Plaintiff Owens filed an action against Defendant before this Court related to the Data Incident. *Id.* Thereafter, a number of similar lawsuits with overlapping claims and classes were filed against Defendant regarding the Data Incident. Following a Motion for Consolidation and Appointment of Leadership, the Court consolidated all related cases into this action and appointed Jeff Ostrow and Mariya Weekes as Interim Class Counsel. [ECF Nos. 4, 6]. Plaintiffs filed their Consolidated Class Action Complaint on February 18, 2025, to which Defendant filed a Motion to Dismiss on April 11, 2025. [ECF Nos. 21, 35]. Plaintiffs filed their Response in Opposition to the Motion to Dismiss on May 15, 2025, to which Defendant filed its Reply on June 10, 2025. [ECF Nos. 40, 46].

This Settlement was reached before the Court considered the Motion to Dismiss. Prior to participating in mediation, the Parties engaged in meaningful discovery. Plaintiffs consulted with liability and damages experts and requested pre-mediation informal discovery from Defendant. In response, Defendant produced extensive material, including but not limited to, the number of individuals and categories of Private Information impacted by the Data Incident. The Parties also exchanged detailed mediation statements outlining their positions with respect to liability, damages, and settlement.

On June 10, 2025, the Parties participated in a full-day private mediation session in Philadelphia, Pennsylvania, before experienced class action mediator and retired federal Magistrate Judge Diane Welsh. The mediation concluded with the Parties agreeing to all material terms of the Settlement. The terms of the settlement reached are memorialized in the Agreement, which was negotiated at arm's length, in good faith, and without collusion by capable and experienced counsel with full knowledge of the facts, the law, and the inherent risks in the Action, and with the active involvement of Plaintiffs and Defendant.

The Parties filed a Notice of Settlement with the Court on June 12, 2025.  [ECF No. 47].
Over the next five weeks, the Parties worked diligently to finalize the terms of the Agreement and
ancillary documents.  They signed the agreement on July 11, 2025.  The Parties did not discuss
attorneys' fees and costs until after they reached agreement on all material Settlement terms.

Specifically, the Settlement provides monetary relief that includes a non-reversionary all-
cash Settlement Fund of $5,000,000.  The Settlement Fund was fully funded after Preliminary
Approval.  The Settlement Fund will pay: (i) all Settlement Class Member Benefits; (ii) any
attorneys' fees and costs awarded by the Court to Class Counsel; and (iii) all Settlement
Administration Costs.  The Settlement also provides that Defendant will provide Class Counsel
with an attestation as to the security measures it has implemented and plans to implement following
the Data Incident.  The costs of any such security measures shall be fully borne by Defendant, and
under no circumstances will such costs be deducted from the Settlement Fund.

Plaintiffs sought Preliminary Approval of the Settlement on behalf of the proposed
Settlement Class and California Settlement Subclass.  *See* [ECF No. 51].  The Court entered the
Preliminary Approval Order, [ECF No. 52], granting the Motion for Preliminary Approval,
conditionally certifying the Settlement Class and California Settlement Subclass, and finding it
was likely to grant Final Approval, and approving a comprehensive Notice Program and Claim
Process.  Following entry of the Preliminary Approval Order, the Parties and the Settlement
Administrator implemented and completed the Notice Program.  Mot. for Final Approval at 7–9.
The Claim Form Deadline was December 29, 2025.  *Id.*

Having completed the Notice Program, Plaintiffs and Class Counsel filed the Motion for
Final Approval and Application for Attorneys' Fees and Costs.  [ECF No. 56].  Only five
Settlement Class Members have opted out of the Settlement.  Those individuals are identified in

the attached ***Exhibit A***.  Those Settlement Class Members will not be bound by the Settlement or Releases contained therein.  Zero objections were submitted by Settlement Class Members.

## LEGAL STANDARDS FOR CLASS SETTLEMENT APPROVAL

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal citations omitted).  "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Id.* (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).  In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Federal Rule of Civil Procedure 23(a) factors and at least one subsection of Federal Rule of Civil Procedure 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial.  *See id.* at 672.; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (explaining a court evaluates whether certification of a settlement class is appropriate under Rule 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See* Fed. R. Civ. P. 23(a)(1)–(4).  Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Eleventh Circuit also requires that the class representatives have standing to sue and that the proposed class is adequately defined and clearly ascertainable.  *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

Before addressing any Rule 23 factor, however, the Court must ensure that standing under Article III is met.  *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing . . . .").  To satisfy Article III standing, a plaintiff must "(1) suffer[] an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  To do so, the Court considers whether the following factors are met:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.*  Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors called the *Bennett* factors."  *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett*, 737 F.2d at 986). These additional factors are:

> [(a)] "there was no fraud or collusion in arriving at the settlement," and  [(b)] the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 (citations omitted) ("*Bennett* factors").

Courts have substantial discretion in approving a settlement agreement, *id*. at 986, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced

counsel support a preliminary finding of fairness. *See* Manual for Compl. Lit., Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (cleaned up).

## ANALYSIS

The Court finds, for settlement purposes only that it should finally certify the proposed Settlement Class and California Settlement Subclass and enter this Final Approval Order because the Settlement Class, California Settlement Subclass, and proposed Settlement satisfy the Rule 23(a), 23(b)(3), and 23(e) requirements and the *Bennett* factors. Nothing has changed since the Court granted Preliminary Approval. Additionally, the response from the Settlement Class Members has been overwhelmingly favorable.

### A.    **Final Certification Is Appropriate.**

As the Court found in the Preliminary Approval Order, when it concluded it was likely to certify the Settlement Class and California Settlement Subclass, the Court now finds, for settlement purposes only, that the Rule 23 factors are satisfied, and certification of the proposed Settlement Class and California Settlement Subclass is appropriate under Rule 23. The Court further finds that the Article III standing requirement is met here.

The Court therefore finally certifies the following Settlement Class:

**Settlement Class**: All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.

A subset of the Settlement Class is the California Settlement Class of "Settlement Class Members residing in California as of December 29, 2023."[2]

---

[2]  Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendant, and their respective subsidiaries and affiliated companies; (b) governmental entities; (c) the Judge assigned to

The Court will address each Rule 23(a) and 23(b)(3) factor in turn.

### 1.    The Rule 23(a) Factors Are Satisfied.

#### (i)    Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires the "class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The numerosity requirement is "generally a low hurdle" and, as a baseline, "less than twenty-one is inadequate . . . [and] more than forty is adequate[.]" *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1267 (11th Cir. 2009) (citation modified). Here, the numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class includes 702,115 individuals. *See Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity generally satisfied where there are more than 40 class members); *In re Fortra File Transfer Software Data Sec. Breach Litig*., No. 24-MD-03090, 2025 WL 2675178, at *5 (S.D. Fla. Sept. 17, 2025); *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *4 (S.D. Fla. Feb. 11, 2025); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 (S.D. Fla. Apr. 10, 2024). The joinder of approximately 700,000 Settlement Class Members would certainly be impracticable, and thus numerosity is satisfied.

#### (ii)    Rule 23(a)(2) – Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will

---

the Action, that Judge's immediate family, and Court staff; and (d) all Settlement Class Members who submit a valid opt-out request by the Opt-Out Deadline.

resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation modified).

The commonality requirement is a "low hurdle." *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g.*, *Fortra*, 2025 WL 2675178, at *5-6; *Fortra*, 2025 WL 457896, at *4; *Mednax*, 2024 WL 1554329, at *4 (commonality satisfied because claims turn on adequacy of defendants' data security to protect PII and PHI); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *4 (S.D. Fla. Dec. 5, 2022); *see also Equifax*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of commonality).

Here, Plaintiffs and Settlement Class Members all had their Private Information impacted by the Data Incident. Plaintiffs' claims turn on whether Defendant's data security environment, or their practices or procedures related to the collection of sensitive data or selection of third parties who are given access to that data, was adequate to protect Plaintiffs' and the Settlement Class Members' Private Information. These issues are common to the Settlement Class (including the California Settlement Subclass), are alleged to have injured all Settlement Class Members in the same way and would generate common answers central to the viability of all claims were this case to proceed to trial. In other words, evidence to resolve said claims does not vary among Settlement Class Members and can therefore be fairly resolved, for purposes of settlement, for all Settlement Class Members at once. Thus, commonality is satisfied.

### *(iii)    Rule 23(a)(3) – Typicality*

Under Rule 23(a)(3), a class representative's claims must also be typical of the putative class they seek to represent. *See* FED. R. CIV. P. 23(a)(3). Typicality "measures whether a significant nexus exists between the claims of the named representative and those of the class at

9

large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); *see also Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). "Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and [] factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co*., 390 F.3d 695, 714 (11th Cir. 2004) (citation modified); *see also Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012). When the same course of conduct is directed at the named plaintiff and the members of the proposed class, typicality is satisfied. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Plaintiffs' interests are aligned with the Settlement Class Members in that they all were sent a notice letter indicating their Private Information may have been impacted in the Data Incident and were therefore all affected by the same purportedly inadequate security that allegedly harmed Settlement Class Members. Their claims are based on the same legal theories and underlying event. Thus, the typicality requirement is satisfied. *See Hines*, 334 F.3d at 1256; *Fortra*, 2025 WL 2675178, at *6; *Fortra*, 2025 WL 457896, at *5; *Mednax*, 2024 WL 1554329, at *4.

### (iv)      *Rule 23(a)(4) – Adequacy*

Adequacy under Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Adequacy relates to (i) whether the proposed class representative has interests antagonistic to the class, and (ii) whether the proposed class counsel has the competence to undertake this litigation. *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp's Ret. Plan*, 221 F.3d

1235, 1253 (11th Cir. 2000) (citation modified); *Fortra*, 2025 WL 2675178, at *6; *Fortra*, 2025 WL 457896, at *5; *Mednax*, 2024 WL 1554329, at *5.

Here, like all Settlement Class Members, Plaintiffs have claims against Defendant arising from the Data Incident that allegedly impacted their Private Information and were similarly injured by Defendant's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class Members have the same interests in recovering damages and other relief. Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class Counsel, acting in the best interest of the Settlement Class Members, and accepting the classwide Settlement. Plaintiffs are committed to continuing to assist Class Counsel through Final Approval.

Class Counsel "are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context, demonstrating their adequacy." *Fortra*, 2025 WL 2675178, at *7 (citing *Fortra*, 2025 WL 457896, at *5, and *Mednax*, 2024 WL 1554329, at *5). Class Counsel have litigated this Action by evaluating the claims, preparing comprehensive pleadings, serving informal discovery, consulting with data security experts, responding to Defendant's motion to dismiss [ECF Nos. 35, 40, 46], complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. *See Fortra*, 2025 WL 2675178, at *7; *Fortra*, 2025 WL 457896, at *5.

Accordingly, Plaintiffs have no conflicts with the Settlement Class Members and have demonstrated their adequacy as Class Representatives by "(i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified counsel; (iii) producing information and documents to counsel to permit investigation and development of the complaints; (iv) being

available as needed throughout the litigation; and (v) monitoring the Litigation." *Fortra*, 2025 WL 2675178, at *7 (citing *Fortra*, 2025 WL 457896, at *5 (quoting *Mednax*, 2024 WL 1554329, at *5)).  The adequacy requirement is therefore met, and the Court confirms its appointments of Plaintiffs as the Class Representatives and Class Counsel.  *See Fortra*, 2025 WL 2675178, at *7 (appointing Class Counsel and plaintiffs as class representatives); *Fortra,* 2025 WL 457896, at *6 (same).

## 2.      The Rule 23(b)(3) Factors Are Satisfied.

Having found all Rule 23(a) factors are satisfied, the Court proceeds to address at least one Rule 23(b) subsection—namely, Rule 23(b)(3)—to ascertain whether "questions of law or fact common to class members predominate over any questions affecting only individual members," and to ensure "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  For predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

### (i)      Predominance

The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement."  *Id.* at 623.  "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 985 (11th Cir. 2016) (quotation omitted).  Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions."  *In re Takata*

*Airbag Prod. Liability Litig.*, 677 F. Supp. 3d 1311, 1324 (S.D. Fla. 2023) (citation modified).  The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile."  *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant.  *Id*. at 312; *Fortra*, 2025 WL 2675178, at *8; *Fortra*, 2025 WL 457896, at *6; *Mednax*, 2024 WL 1554329, at *5.  All Settlement Class Members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person.  "Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis."  *Fortra*, 2025 WL 2675178, at *7 (citing *Fortra*, 2025 WL 457896, at *6 (quoting *Mednax*, 2024 WL 1554329, at *5)).  The predominance requirement is therefore satisfied.

### (ii)    *Superiority*

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  "The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs."  *Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (quotation omitted); *Fortra*, 2025 WL 2675178, at *8 (citing *Fortra*, 2025 WL 457896, at *6, and *Mednax*, 2024 WL 1554329, at *5).  Here, adjudicating individual actions would be impractical.  The amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly.  Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and

may lead to inconsistent rulings.  Accordingly, certification of this suit as a class action is superior

to other methods to fairly, adequately, and efficiently resolve the claims asserted.  *See Fortra*,

2025 WL 2675178, at *8; *Fortra*, 2025 WL 457896, at *6.

### 3.    The Article III Standing Requirement Is Met.

To demonstrate Article III standing Plaintiffs must establish that they each "(1) suffered an

injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision."  *Spokeo*, 578 U.S. at 338.  Further, "[t]o

have standing to represent a class, a party must not only satisfy the individual standing

prerequisites, but must also 'be part of the class and possess the same interest and suffer the same

injury as the class members.'"  *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008)

(quoting *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).  There is

no requirement that Article III standing be proved with evidentiary support at the settlement

approval stage.  *See Fortra*, 2025 WL 2675178, at *8 (citing *Fortra*, 2025 WL 457896, at *7, and

*Equifax*, 999 F.3d at 1261 n.8).

"Standing exists when a plaintiff's sensitive personal information is allegedly accessed and

exfiltrated in a data breach."  *Fortra*, 2025 WL 2675178, at *8 (citing *Fortra*, 2025 WL 457896,

at *6, and *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D.

Fla. Mar. 15, 2022)); *see also Desue*, 2022 WL 17477004, at *5.  In a similar data breach class

action, this Court extensively addressed standing in data breach class actions and subsequently

relied on that analysis when preliminarily approving a class settlement in that case.  *See In re*

*Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200-08 (S.D. Fla.

2022) (denying motion to dismiss for lack of standing, including in the context of *TransUnion*

*LLC v. Ramirez*, 594 U.S. 2190 (2021)); *Mednax*, 2024 WL 1554329, at *4 n.2 (citing *Green-*

*Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (citing standing analysis from motion to dismiss opinion and preliminarily approving class settlement)).

To establish an imminent threat of identity theft based on a data breach, plaintiffs must show that "some misuse of class members' data" has already occurred. *Green-Cooper*, 73 F. 4th at 889 (citing *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021) (emphasis in original)). Plaintiffs' allegations that a criminal ransomware group accessed their Private Information and published it to its data leak site, and that two Plaintiffs' Private Information is now on the dark web, supports that misuse. *See Green-Cooper*, 73 F. 4th at 890 (posting of Private Information on the dark web "establishes both a present injury . . . and a substantial risk of future injury"). Therefore, the actual misuse of and actual access to the Settlement Class Members' data are injuries-in-fact that plausibly give rise to a substantial risk of future harm from identity theft; emotional injury; the diminution in the value of Plaintiffs' and Settlement Class Members' Private Information; and the loss of privacy. *See In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2024 WL 4547212, at *3-7 (S.D. Fla. Feb. 11, 2025) (denying motion to dismiss for lack of standing); *Mednax*, 603 F. Supp. 3d at 1202-05.

Traceability—the causal connection between the Data Incident and the Settlement Class Members' injuries—also exists for Article III standing. Plaintiffs' and Settlement Class Members' injuries must be "fairly traceable" to Defendant's actions, but that does not mean they are required to show proximate cause, as harms flowing indirectly from the Data Incident are sufficient for standing. *See Fortra*, 2024 WL 4547212, at *6-7; *Mednax*, 603 F. Supp. 3d at 1205. Defendant's alleged failure to protect the Private Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiffs' documented incidents of identity theft, economic losses, lost time, and emotional distress, and put them at a substantial risk of future

incidents of identity theft too.  *See Fortra*, 2025 WL 2675178, at *9; *Fortra*, 2025 WL 457896, at *7; *Mednax*, 603 F. Supp. 3d at 1206.  The Data Incident need not have provided all information necessary to inflict those harms; it is enough the Data Incident could assist give identity thieves in perpetrating them.  *See Fortra*, 2025 WL 2675178, at *9; *Fortra*, 2025 WL 457896, at *7; *Mednax*, 603 F. Supp. 3d at 1206.

Thus, like in *Fortra*, *Mednax*, and *Desue*, "because all Plaintiffs and Settlement Class members had their Private Information impacted in the Data Incident, they have all suffered injuries in fact that are fairly traceable to the Data Incident and would likely be redressed by a favorable judgment if this case was litigated through trial, demonstrating Article III standing.  The Court therefore finally certifies the Settlement Class." *See Fortra*, 2025 WL 2675178, at *9; *Fortra*, 2025 WL 457896, at *8.

B.    **Final Approval of the Settlement Is Warranted.**

The Court already determined it was likely to grant Final Approval of the Settlement in the Preliminary Approval Order.  Now, the Court must finally determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) while also considering the *Bennett* factors, with the Settlement Class Members having now been given Notice of the Settlement and the opportunity to opt-out of or object to it.  The Court finds the Settlement satisfies the requirements of Rule 23(e) as well as the *Bennett* factors.  The Court will address each factor in turn.

1.    **Rule 23(e)(2)(A) – Adequacy of Representation**

For the same reasons that led the Court to find Class Counsel adequate to certify the Settlement Class and California Settlement Subclass, Class Counsel have adequately represented the Settlement Class Members' interests for purposes of Final Approval.  Additionally, as the Court has found for purposes of preliminary certification, Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class Members, demonstrating

their adequacy.  Plaintiffs have the same interest in the Settlement relief as do Settlement Class Members, and the absent Settlement Class Members have no diverging interests.  Accordingly, the first Rule 23(e)(2) factor weighs heavily in favor of granting Preliminary Approval because both Class Counsel and the Class Representatives have adequately represented the Settlement Class (including the California Settlement Subclass).  *See Fortra*, 2025 WL 2675178, at \*9; *Fortra*, 2025 WL 457896, at \*8; *Mednax*, 2024 WL 1554329, at \*6.

### 2.    Rule 23(e)(2)(B) and *Bennett* Factors 5-6 – Arm's Length Negotiations

The Court finds the Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake.  *See Fortra*, 2025 WL 2675178, at \*10; *Fortra*, 2025 WL 457896, at \*8; *Mednax*, 2024 WL 1554329, at \*6.  Before discussing a potential resolution, the Parties conducted a thorough factual and legal investigation including significant pre-mediation discovery, allowing them to fully understand the claims, defenses, and risks of continued litigation.  Mot. for Final Approval at 3-4.  The Settlement was reached after extensive legal and factual investigation by the Parties, a full-day mediation assisted by a well-respected and experienced mediator, and weeks of additional negotiations to finalize the terms of the Agreement and ancillary documents.  *Id.*  The Parties did not discuss attorneys' fees and costs until after they had agreed on all material Settlement terms.  *Id*.

For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement.  *See Bennett*, 737 F.2d at 986.  Accordingly, "[t]he fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)."  *Fortra*, 2025 WL 2675178, at \*10 (citing *Fortra*, 2025 WL 457896, at \*8 (quoting *Mednax*, 2024 WL 1554329, at \*6)).

3.      **Rule 23(e)(2)(C) and *Bennett* Factors 1-4 – Adequacy of Settlement Relief**

The Court finds, considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is reasonable.  While Plaintiffs believe the claims asserted in the Action are meritorious and the Plaintiffs would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class Members uncertain.  "[D]ata breach class actions are risky cases." *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7) (citation omitted); *see also Fox v. Iowa Health Sys.*, No. 3:18-cv00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (explaining data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare.").  And given the complexity of the claims and arguments here, a lengthy trial would likely be required before Settlement Class Members could recover.  Maintaining class certification through trial "is another over-arching risk" as well.  *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7)).  "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all," weighing heavily in favor of preliminary approval.  *Id.*

Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments, Credit Monitoring, and injunctive relief for all Settlement Class Members.  *See* [ECF No. 56-1] at ¶¶ 80–81, 108; *see also Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches") (citation omitted)).  All Settlement Class Members are given an equal opportunity to claim Settlement Class Member

Benefits.  Specifically, each Settlement Class Member has the option to be reimbursed for documented losses up to $5,000.00, or they may elect to receive a flat cash payment of an estimated $100.00.  *See* [ECF No. 56-1] at ¶ 81.a.-b.  Additionally, California Settlement Subclass Members may elect to receive the California Statutory Award in the estimated amount of $100.00.  *Id.* ¶ 81.c.  In addition, all Settlement Class Members may elect Credit Monitoring.  *Id.* ¶ 81.e.

Based upon the number of Claims submitted to the Settlement Administrator, the Court observes the Settlement Class Members have reacted favorably by submitting Claims.  *See* Mot. for Final Approval at 9.  The Court further finds the Claim Form submission process and distribution of Settlement Class Member Benefits to be fair, convenient, and effective.  Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Credit Monitoring, if elected.  *Id*.  The Settlement Administrator is highly qualified to manage the entire process.  Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 2675178, at *11 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7)).

Furthermore, the attorneys' fees do not impact the other Settlement terms.  The request for one-third of the Settlement Fund in attorneys' fees, plus reimbursement of costs, to be paid from the Settlement Fund, is subject to this Court's approval.  Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms.  The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or costs award.  Finally, the agreements between the Plaintiffs and Defendant are all in the Agreement.  The Court therefore finds Rule 23(e)(2)(C)'s requirements and the first four *Bennett* factors are met.

### 4.    *Rule 23(e)(2)(D) – Equitable Treatment of Settlement Class Members*

As this Court found in *Fortra*, 2025 WL 2675178, at *11; *Fortra*, 2025 WL 457896, at *9,

and *Mednax*, 2024 WL 1554329, at *7, all Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits.  Thus, "[t]he method of distributing the settlement benefits will be equitable and effective."  *Fortra*, 2025 WL 2675178, at *11 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7)).  Further, the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all other material Settlement terms.  The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or costs award.  [ECF No. 56-1] at ¶ 114.  Finally, the agreements between the Plaintiffs and Defendant are all in the Agreement.  Mot. for Final Approval at 15.

## C. <u>Appointment of Class Representatives and Class Counsel Is Appropriate</u>.

For the reasons discussed above, the Court finds that the Plaintiffs have adequately represented the Settlement Class Members throughout this Action.  The Court therefore designates and appoints the Plaintiffs as Class Representatives.

Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  FED. R. CIV. P. 23(g)(1)(A).  The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  *Id.*

The Court finds Class Counsel have expended a reasonable amount of time, effort, and expense investigating the Data Incident and in litigating this Action.  Further, it is clear from their track record of success, as outlined in their resumes, that Class Counsel are highly skilled and

knowledgeable concerning class action practice.  Therefore, for purposes of the Settlement only, and pursuant to Rule 23(g)(1), the Court appoints Class Counsel to act on behalf of the Settlement Class (including the California Settlement Subclass) with respect to the Settlement.  They are experienced and competent counsel and will adequately protect the interests of the Settlement Class Members.  *See Fortra*, 2025 WL 2675178, at *12; *Fortra*, 2025 WL 457896, at *10.

### D.     The Notice Program Was Properly Administered.

Notice of a proposed settlement must be the "best notice practicable."  FED. R. CIV. P. 23(c)(2)(B).  The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Having consider the results of the Notice Program implementation, the Court now finds the form, content, and method of giving notice to the Settlement Class Members as described in the Notice Program, including the forms of Postcard Notice and Long Form Notice, Settlement Website, Settlement telephone line for frequently asked questions, and Claim Form was (a) the best practicable notice to the Settlement Class Members; (b) reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, the terms of the Settlement, the effect of the proposed Settlement (including the Releases contained therein), and their rights under the proposed Settlement, including the right to opt-out of or to object to the proposed Settlement and appear at the Final Approval Hearing; (c) reasonable and constituted due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) written in plain language, using simple terminology, and designed to be readily understandable by Settlement Class Members.  Accordingly, the Notice Program satisfied the Rule 23(c)(2)(B) and due process requirements.  *See Fortra*, 2025 WL 2675178, at *12; *Fortra*, 2025 WL 457896, at *10.

Rule 23(h)(1) further requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." FED. R. CIV. P. 23 (h)(1). The Notice Program satisfied that requirement, as it notified the Settlement Class Members that Class Counsel will apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *See Fortra*, 2025 WL 2675178, at *12; *Fortra*, 2025 WL 457896, at *11.

\*\*\*\*

Upon final review, the Court finds the proposed Settlement is fair, reasonable, and adequate; the Settlement Class and California Settlement Subclass are certified for Settlement purposes; and the Notice Program satisfied the requirements of Rule 23 and due process. Accordingly, Final Approval is granted.

## ATTORNEYS' FEES AND COSTS AWARD

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, the Court hereby awards $1,666,666.66 for attorneys' fees, which is equal to 33.33% of the $5,000,000.00 Settlement Fund, and $32,384.30 for reasonable litigation costs. Class Counsel shall determine the allocation of attorneys' fees to all Plaintiffs' counsel.

The requested attorneys' fee award is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991);[3] *see also Fortra*, 2025 WL 2675178, at *13; *Fortra*, 2025 WL 457896, at *11. It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based

---

[3] The factors include: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the clients; and (12) fee awards in similar cases. *Camden I*, 946 F.2d at 772 n.3.

upon the benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Fortra*, 2025 WL 2675178, at *13; *Fortra*, 2025 WL 457896, at *11.  The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs.  "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'"  *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted).  "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant."  *Id.* (citing *Van Gemert*, 444 U.S. at 478).

"As a result, the Supreme Court, the Eleventh Circuit, and courts in this District [ ] have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'"  *See Fortra*, 2025 WL 2675178, at *13 (citing *Fortra*, 2025 WL 457896, at *12 (quoting *Gevaerts*, 2015 WL 6751061, at *10) (citations omitted)); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").  Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).  Further, "[a]dequate compensation promotes the availability of counsel for aggrieved persons."  *Millstein v. Holtz*, No. 21-CV-61179, 2022 WL 18024840, at *8 (S.D. Fla. Dec. 30, 2022) (citation omitted); *Fortra*, 2025 WL 2675178, at *13; *Fortra*, 2025 WL 457896, at *12.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement.  In *Camden I*—the controlling authority regarding attorneys' fees in common-fund class actions—the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I*, 946 F.2d at 774; *Fortra*, 2025 WL 2675178, at *14; *Fortra*, 2025 WL 457896, at *12.

The Court has discretion in determining the appropriate fee percentage.  "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *In re Sunbeam Sec. Litigation*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 774).  Here, the attorneys' fee request falls within this accepted range.  *See Fortra*, 2025 WL 2675178, at *14 (citing *Fortra*, 2025 WL 457896, at *12, and *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 4415214 (S.D. Fla. Oct. 5, 2024) (noting district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement)).  *See also, e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding a 35% fee); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (affirming fee award of 33.33 % of settlement).

The litigation costs, comprised of actual out-of-pocket costs Plaintiffs' Counsel reasonably and necessarily incurred and paid in connection with the prosecution of the Action and the Settlement, are reasonable.  "Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class."  *Morgan*, 301 F.Supp.3d at 1258; *see also Fortra*, 2025 WL 2675178, at *14; *Fortra*, 2025 WL 457896, at *12.  Further, pursuant to Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. Jan. 8, 1988) (noting plaintiffs' counsel is entitled to reimbursement from the class fund for reasonable expenses).

## RELEASES, ENTRY OF FINAL JUDGMENT, AND RETENTION OF JURISDICTION

With the exception of those listed on ***Exhibit A***, the Court adjudges that the Class Representatives and all Settlement Class Members are bound by this Final Approval Order.

Because the Court approves the Settlement set forth in the Agreement as fair, reasonable, and adequate, the Court authorizes and directs implementation of all terms and provisions of the Agreement, including the payment of Valid Claims, attorneys' fees and costs, and the Settlement Administration Costs.

Judgment shall be, and hereby is, entered dismissing the Action with prejudice, on the merits, and without taxation of costs in favor of or against any Party.

As of the Effective Date, the Releasing Parties hereby fully and irrevocably release and forever discharge the Released Parties of and from the Released Claims.  Notwithstanding, the Releases shall not interfere with a Settlement Class Member's right to communicate with a government or law enforcement agency regarding any inquiries involving the Data Incident.

Upon the entry of this Final Approval Order, with the exception of Class Counsel, Defendant's Counsel, Defendant, and the Class Representatives' implementation of the Settlement and the approval process in this Action, all Settlement Class Members shall be enjoined and barred from asserting any claims or continuing any litigation against Defendant and the Released Parties arising out of, relating to, or in connection with the Released Claims.

Any residual funds remaining in the Settlement Fund 240 days following the date Settlement Class members are sent an email to select their form of payment shall be distributed to the National Cybersecurity Alliance (https://www.staysafeonline.org/) as the *cy pres* recipient. The Court finds that its mission matches the goals of this Action to redress and protect the privacy rights for consumers.

The Court hereby decrees that neither the Agreement, nor this Final Approval Order, nor the fact of the Settlement, is an admission or concession by Defendant or the Released Parties of any fault, wrongdoing or liability whatsoever, or as an admission of the appropriateness of class certification for trial or dispositive motion practice. This Final Approval Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the Settlement shall be offered or received in evidence as an admission, concession, presumption, or inference against Defendant or the other Released Parties in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement or to support a defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense.

The Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions from the Settlement Fund; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed

26

pursuant to the terms and conditions of the Settlement Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

In the event the Effective Date of the Settlement Agreement does not occur, the Settlement shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement, and this Order shall be vacated.  In such event, all orders entered and releases delivered in connection with the Settlement shall be null and void and the Action shall return to its status immediately prior to execution of the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Final Approval, [ECF No. 56], is **GRANTED**.  This case is **DISMISSED** *with prejudice* with respect to the Defendant herein, and no costs shall be awarded other than specified in this Order or provided by the Settlement Agreement.  There being no reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Miami, Florida this 26th day of January, 2026.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

27

# <u>EXHIBIT A – OPT-OUT LIST</u>

1. Victoria Figueiredo

2. Anna Figueiredo

3. Nini Kisiskhelashvili

4. Donna Burroughs

5. Janet Rullo